MILLER NASH GRAHAM & DUNN LLP
Phillip Allan Trajan Perez, Bar No. 234030
trajan.perez@millernash.com
340 Golden Shore, Suite 450
Long Beach, CA 90802
Telephone:  562.435.8002
Facsimile:    562.435.7967

MILLER NASH GRAHAM & DUNN LLP
Sean D. O'Brien, Bar No. 238418
sean.obrien@millernash.com
Justin C. Sawyer (to be admitted *pro hac vice*)
justin.sawyer@millernash.com
Sanja Muranovic (to be admitted *pro hac vice*)
sanja.muranovic@millernash.com
3400 U.S. Bancorp Tower
111 S.W. Fifth Ave.
Portland, OR 97204
Telephone:  503.224.5858
Facsimile:    503.224.0155

Attorneys for Plaintiff,
BEATPORT, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATPORT, LLC, a Colorado limited liability company, | Case No. |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | **(1) Trade Secret Misappropriation; and** |
| SOUNDCLOUD LIMITED, a German limited company; SOUNDCLOUD INC., a Delaware corporation; and ALVARO VELILLA, an individual, | **(2) Misappropriation of a Trade Secret Under State Law** |
| Defendants. | **[DEMAND FOR JURY TRIAL]** |

4842-6599-4630.2

COMPLAINT

This complaint seeks a judgment of liability of the defendants for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq. and for related claims under state law. For its complaint, Plaintiff Beatport, LLC alleges as follows:

## PARTIES

1.      Plaintiff Beatport, LLC is a Colorado limited liability company having its principal place of business at 3501 Wazee Street, Suite 318, Denver, Colorado 80216. Beatport provides the global DJ community access to a vast catalogue of high-quality, expertly curated digital music from the industry's leading artists and labels. In April 2018, Beatport acquired substantially all of the assets of Pulselocker, Inc., a Delaware company with its principal place of business in San Francisco, California.

2.      Defendant SoundCloud Limited is believed to be a German limited company with a place of business at Rheinsberger Str. 76/77, 10115 Berlin, Germany. This is based on sworn statements submitted to the U.S. Patent and Trademark Office in November 2017 on behalf of SoundCloud Limited. SoundCloud Limited provides a music and audio platform, including providing access to a music catalog directly through DJ performance software.

3.      Defendant SoundCloud Inc. is a Delaware corporation having its principal place of business at 5th Floor, 71 West 5th Avenue, New York, New York 10003. According to the most recent Statement of Information filed with the California Secretary of State, SoundCloud maintains a principal business office at 11845 West Olympic Boulevard, Suite 1100W, Los Angeles, California 90064. On information and belief, SoundCloud Inc. is a wholly-owned subsidiary of SoundCloud Limited. On information and belief, SoundCloud Inc. provides SoundCloud Limited with research and development services and is the interface between SoundCloud Limited and its U.S. customers.

2

COMPLAINT

4.      Defendant Alvaro Velilla is an individual residing at 4346 Kraft Avenue, Studio City, California 91604. On information and belief, Velilla is the Director, Creator Partnerships of SoundCloud. Velilla was formerly the Chief Product Officer of Pulselocker.

5.      SoundCloud Inc. and SoundCloud Limited are referred to collectively as "SoundCloud" in this complaint. SoundCloud and Velilla are referred to collectively as "Defendants" in this complaint.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because it raises a question under a federal statute, the Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1836 et seq.

7.      This Court also has subject matter jurisdiction over this action under 18 U.S.C. § 1836(c) because it is a civil action brought under the DTSA.

8.      This Court has subject matter jurisdiction over the state-law claims under 28 U.S.C. § 1367 because the state-law claims are related to the same case or controversy that is alleged in the claim under the federal DTSA.

9.      This Court has personal jurisdiction over SoundCloud Limited as it knowingly conducts business with California residents through its website, soundcloud.com. For example, SoundCloud Limited's website includes terms and conditions that include this statement: "If you are a resident of the State of California, you may have these Terms of Use mailed to you electronically by sending a letter to the foregoing address with your electronic mail address and a request for these Terms of Use." Also, numerous users within California use SoundCloud Limited's website to post audio tracks about California issues, including the users indicated on at least the following webpages:

- https://soundcloud.com/ca-nation (Political news from the Sacramento Bee)
- https://soundcloud.com/politics-california (California Politics Podcast)

3

COMPLAINT

- https://soundcloud.com/california-now-podcast (California Now Podcast about travel and tourism within California)
- https://soundcloud.com/ramahcalifornia (about Camp Ramah in Ojai, California)
- https://soundcloud.com/roamincalifornia (a user in Redlands, California)
- https://soundcloud.com/husc-icw (information on the Huntington-University of Southern California Institute on California and the West about the history and culture of California and the American West)
- https://soundcloud.com/thecaliforniareport (the California Report, which provides coverage of issues, trends, and public policy decisions affecting California)

10.    This Court has personal jurisdiction over SoundCloud Inc. as it maintains a principal business office in Los Angeles, California. On information and belief, Velilla performs a substantial portion of his duties as Director of SoundCloud from this judicial district, and his actions gave rise to this complaint.

11.    This Court has personal jurisdiction over Velilla as he resides in the state of California, within this judicial district.

12.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because SoundCloud Inc. and Velilla are both residents of the State of California and both reside within this judicial district. Velilla is domiciled in Studio City, California. And SoundCloud Inc. is subject to the Court's personal jurisdiction with respect to this action.

13.    Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to this action occurred in this judicial district. On information and belief, Velilla performs a substantial portion of his duties as Director of SoundCloud from this judicial district.

14.    Alternatively, venue is proper in this judicial district under 28 U.S.C.

4

COMPLAINT

§ 1391(b)(3) since Velilla is subject to the Court's personal jurisdiction with respect to this action.

## BACKGROUND ALLEGATIONS

### Pulselocker and the Innovative Locker Technology

15.    Beginning around 2012 until its insolvency around late 2017, Pulselocker had pioneered an innovative, proprietary software that allows end users to locally access a music catalog, curate playlists, and playback audio files for personal and public performances without relying on an internet connection (the "Pulselocker Platform").

16.    The Pulselocker Platform was specifically developed to provide offline capabilities to third-party applications, such as performance software used by amateur and professional DJs during live performances. Indeed, the offline capabilities are vital for DJs who cannot afford to lose an internet connection—and with it access to the DJs music catalog—during a live performance, whether the performance is before in front of a small wedding party or in front of tens of thousands at a festival.

17.    The Pulselocker Platform was normally accessed through DJ performance software that was downloaded, or otherwise accessible through, the user's computer.

18.    Aspects of the Pulselocker Platform are the subject of United States Patent No. 9,727,708, U.S. Patent Application Publication No. 2017/0357786, and U.S. Patent Application Publication No. 2018/0114030 (the "Pulselocker Patent Documents").

19.    The Pulselocker Platform also included source code, know-how, software development kits (SDKs), application programming interfaces (APIs), software architecture and design guides, product design principles, product roadmaps, functionality requirements relating to platform integration across software modules, methods for on-the-fly cryptography in a random file access

mode, double buffering techniques to stream multiple audio files simultaneously while they are being decrypted so as not to create distortions in the audio stream, each directed to providing offline capabilities to third-party applications, including performance software used by DJs, to locally access a music catalog, curate playlists, and playback audio files (all together, the "Locker Technology").

20.    Velilla, a founder of Pulselocker, was employed as its Chief Product Officer. As founder and Chief Product Officer, Velilla had specific knowledge of the unique solutions provided by the Pulselocker Platform and access to the Locker Technology.

21.    Around December 2017, Velilla left Pulselocker to become the Director of Creator Partnerships for SoundCloud.

**The Insolvency of Pulselocker**

22.    On information and belief, Pulselocker became insolvent around December 2017.

23.    In early 2018, Pulselocker shared the Locker Technology with SoundCloud as part of a due diligence program to explore whether SoundCloud wished to partner with or acquire Pulselocker. The sharing occurred under the terms of a nondisclosure agreement, with instructions that the documents be destroyed at the completion of the due diligence.

24.    After confidentially receiving the Locker Technology from Pulselocker, SoundCloud declined to partner with or acquire Pulselocker.

**Beatport and Its Acquisition of the Assets of Pulselocker**

25.    Founded in 2004 as the principal source of music for disc jockeys (DJs), Beatport is today the worldwide home of electronic music for DJs, producers, and their fans.

26.    In April 2018, Beatport acquired substantially all the assets of Pulselocker, including the Pulselocker Patent Documents, the Locker Technology, U.S. Trademark Registration No. 4,433,119 for the PULSELOCKER trademark,

6

1  and the rights and remedies to enforce those assets.

2      27.    Beatport is developing and preparing to launch its own version of the

3  Pulselocker Platform based on the assets that it acquired from Pulselocker. As

4  noted above, such DJ performance software is normally downloaded from the

5  internet, or otherwise accessible through, the user's computer. Like Pulselocker

6  before it, Beatport intends to provide its version of the Pulselocker Platform

7  throughout the United States and worldwide.

8                        **Defendants' Wrongful Activities**

9      28.    Velilla, as Pulselocker's founder and Chief Product Officer, had access

10  to the Locker Technology while with Pulselocker. Hence, Velilla had access to

11  source code and to documents, data, and information from which a technical person

12  could produce source code to replicate the Locker Technology.

13      29.    As an employee and officer of Pulselocker, Velilla had a duty to

14  maintain the confidentiality of any trade secrets or other confidential information

15  that he acquired in the course of his employment. That duty passed from

16  Pulselocker to Beatport when Beatport acquired substantially all the assets of

17  Pulselocker.

18      30.    In December 2017, just before Velilla left Pulselocker, no one other

19  than Pulselocker offered a product comparable to the Pulselocker Platform, which

20  took Pulselocker more than five years to develop. Yet, in October 2018, just ten

21  months after Velilla joined SoundCloud, SoundCloud announced it would launch a

22  technology that would allow DJs to access an offline music catalog and stream

23  music directly through performance software.

24      31.    On social media, Velilla bragged that Pulselocker's spirit lives on in

25  SoundCloud—not in Beatport, which actually acquired Pulselocker's intellectual

26  property—telling his social media followers that SoundCloud launched a product

27  similar to what Pulselocker had provided. That post is reproduced below:

28  / / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18   32.   On information and belief, Velilla improperly disclosed the Locker

19   Technology to SoundCloud—and SoundCloud received the Locker Technology

20   from Velilla—to substantially reduce the development time for SoundCloud's

21   competing product to allow DJs to access an offline music catalog and stream

22   music directly through performance software (the "SoundCloud Product") and to

23   improperly beat Beatport to market to gain an unfair competitive advantage.

24   33.   On information and belief, SoundCloud improperly used the Locker

25   Technology, received under the terms of a nondisclosure agreement with

26   Pulselocker, to substantially reduce the development time for the SoundCloud

27   Product and to improperly beat Beatport—the true owner of the Locker

28   Technology—to market to gain an unfair competitive advantage.

**Efforts to Engage Defendants Before Litigation**

34. Since at least early November 2018, Beatport has given SoundCloud several opportunities to rebut the claims in this complaint, including Velilla's assessment that SoundCloud's product is similar to the Pulselocker Platform. But SoundCloud has not offered any explanation for the allegations in this complaint. Recognizing the sensitivity of the information involved, counsel for Beatport invited SoundCloud to find a reasonable and mutually agreeable way to share information while protecting its confidential nature. Yet SoundCloud elected not to cooperate outside of litigation.

35. The source code, algorithms, technical specifications, software design, software development kits (SDKs), and application programing interfaces (APIs) necessary to prove the allegations of this complaint are exclusively in SoundCloud's possession. Absent voluntary disclosure by SoundCloud (which SoundCloud declines to provide, even on a confidential basis), Beatport would not have access to those materials without an opportunity for discovery.

## CLAIM 1 – MISAPPROPRIATION OF A TRADE SECRET
### (18 U.S.C. § 1836 et seq.)

36. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 35 above.

37. This is a claim against Defendants for misappropriating a trade secret in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.

38. Being embodied in proprietary and confidential source code, SDKs, APIs, cryptography algorithms, buffering techniques, and other technical designs and architecture, the Locker Technology is not generally known to, and not readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. Indeed, the capabilities of the Pulselocker Platform are so unique that Pulselocker's insolvency created a void in the industry because no other service offered a comparable product.

39.     The Locker Technology is valuable because it allows Beatport, and Pulselocker before it, to be the only market player with such a product—which Pulselocker refined over more than five years of development—thereby retaining a competitive advantage with consumers such as DJs. Indeed, the offline capabilities are critical for DJs who otherwise cannot afford to lose an internet connection—and thus access to the DJs music catalog—during a performance, whether the performance is before guests at a wedding or in front of thousands at a festival.

40.     The Locker Technology is related to a product or service intended for use in interstate or foreign commerce, as it is generally integrated with DJ performance software downloaded from the internet to the user's computer, which could be anywhere throughout the United States or worldwide.

41.     Beatport, and Pulselocker before it, each took reasonable steps under the circumstances to maintain the confidentiality of the Locker Technology. Pulselocker required employees to sign a nondisclosure agreement and a non-compete agreement as a condition of employment with the company. Also, documents and information embodying the Locker Technology were typically marked as "Confidential" or "Internal Use Only," stored on a network drive that required specific permission to access, and distributed internally to Pulselocker only on a need-to-know basis. Certain documents and information embodying the Locker Technology were distributed outside of Pulselocker, when necessary, only under a nondisclosure agreement.

42.     Likewise, Beatport requires employees to sign nondisclosure agreements and non-compete agreements. Beatport also controls access to the sensitive information that comprises the Locker Technology. Documents and information embodying the Locker Technology are typically marked as "Confidential" or "Internal Use Only," stored on a password-protected network drive that requires specific permission to access, and distributed internally to Beatport only on a need-to-know basis.

COMPLAINT

43.   Accordingly, the Locker Technology is a trade secret belonging to Beatport.

44.   On information and belief, and without the consent of Pulselocker or Beatport, Velilla disclosed the Locker Technology through improper means, including, at least, breach of a duty to maintain secrecy owed to Beatport as the successor to Pulselocker's intellectual property rights in the Pulselocker Platform.

45.   On information and belief, Velilla disclosed the Locker Technology to SoundCloud to substantially reduce the development time for the SoundCloud Product.

46.   Velilla knew or had reason to know that the Locker Technology was acquired and conveyed by improper means from Velilla to SoundCloud because of his previous role with Pulselocker, which was the origin of the Locker Technology. Velilla also knew or had reason to know that Beatport acquired substantially all the assets of Pulselocker, having remarked on the acquisition on his social media account.

47.   On information and belief, SoundCloud acquired or used the Locker Technology through improper means, including, at least, inducing Velilla to breach a duty to maintain the secrecy of the Locker Technology.

48.   As noted above, just before Velilla left Pulselocker, only Pulselocker offered a product comparable to the Pulselocker Platform, which Pulselocker engineered over a period of years. Yet, less than a year after Velilla joined SoundCloud, SoundCloud announced it would launch a technology that would allow DJs to access an offline music catalog and stream music directly through performance software.

49.   Hence, on information and belief, and without the consent of Pulselocker or Beatport, SoundCloud received the Locker Technology from Velilla to substantially reduce the development time for the SoundCloud Product and to improperly beat Beatport to market to gain an unfair competitive advantage.

50.     SoundCloud knew or had reason to know that the Locker Technology was received through improper means from Velilla because SoundCloud knew of Velilla's previous role with Pulselocker, which was the origin of the Locker Technology. SoundCloud also knew or had reason to know that Beatport acquired substantially all the assets of Pulselocker, since the acquisition was publicized in the industry and because Velilla, a director of SoundCloud, remarked on the acquisition on his social media account.

51.     In addition or alternatively, on information and belief SoundCloud acquired or used the Locker Technology through improper means, including, at least, breach of a duty to maintain secrecy.

52.     Pulselocker shared the Locker Technology with SoundCloud as part of due diligence that occurred about the time Pulselocker became insolvent. The sharing occurred under the terms of a nondisclosure agreement and included instructions that the documents be destroyed at the completion of the due diligence.

53.     At the time of the confidential disclosure by Pulselocker to SoundCloud, only Pulselocker offered a product comparable to the Pulselocker Platform. Yet, months after confidentially receiving substantial portions of the Locker Technology from Pulselocker, SoundCloud announced it would launch a technology that would allow DJs to access an offline music catalog and stream music directly through performance software.

54.     On information and belief, SoundCloud improperly used the Locker Technology to substantially reduce the development time for the SoundCloud Product and to improperly beat Beatport to market to gain an unfair competitive advantage.

55.     On information and belief, Velilla's disclosure of the Locker Technology to SoundCloud occurred after December 2017. On information and belief, SoundCloud's receipt or use of the Locker Technology occurred after December 2017.

56. Velilla's actions and SoundCloud's actions have damaged Beatport. Beatport has lost the value of having purchased the Locker Technology from Pulselocker, which would have allowed Beatport to be the only market player with this product, thereby retaining competitive advantage with customers like DJs.

57. Furthermore, the integration of Beatport's own product with third-party DJ performance software has been delayed as a result of Velilla's actions and SoundCloud's actions. The field of performance software and hardware partners for DJs is limited, with only a select few viable partners for the Locker Technology. On information and belief, those limited resources are being used to integrate SoundCloud's improperly derived product instead of Beatport's legitimate product.

58. By reason of Defendants' acts of trade secret misappropriation, Beatport has suffered and will continue to suffer irreparable injury unless and until this Court enters an order enjoining Defendants, and each of them, from any further acts of trade secret misappropriation.

59. Defendants' continuing acts of trade secret misappropriation, unless enjoined, will cause irreparable damage to Beatport in that it will have no adequate remedy at law to compel Defendants to cease such acts. Beatport will be compelled to prosecute a multiplicity of actions, one action each time Defendants commit such acts, and in each such action it will be extremely difficult to ascertain the amount of compensation which will afford Beatport adequate relief.

60. In addition, it is important for Beatport to be first to market with its version of the Pulselocker Platform, which is based on the assets that it properly acquired from Pulselocker. This will help Beatport improve its market position and maintain the momentum achieved from its acquisition of the Pulselocker Platform. Defendants' acts of trade secret misappropriation seek to prevent Beatport from being the first to market, causing irreparable damage to Beatport. It would be extremely difficult to ascertain the amount of compensation that would afford Beatport adequate relief for not being first to market with its version of the

COMPLAINT

Pulselocker Platform.

61.    Beatport is therefore entitled to a preliminary injunction and a permanent injunction against further improper conduct by Defendants, those in concert with Defendants, and those directing the improper conduct.

62.    Defendants are also liable for Beatport's actual loss caused by the misappropriation and monetary damages for the unjust enrichment caused by the misappropriation that is not taken into account in computing actual loss. Alternatively, Defendants are also liable to Beatport for a reasonable royalty for Defendants' unauthorized disclosure and use of Beatport's trade secrets.

63.    The Defendants' misappropriation, being willful and malicious, also entitles Beatport to an award of exemplary damages up to twice the monetary damages and to an award of attorneys' fees.

## CLAIM 2 – MISAPPROPRIATION OF A TRADE SECRET
## UNDER STATE LAW
### (California Civil Code §§ 3426 –3426.11)

64.    Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 63 above.

65.    This is a claim against Defendants for misappropriating a trade secret in violation of the Uniform Trade Secrets Act, California Civil Code §§ 3426 et seq.

66.    The acts alleged above also constitute trade secret misappropriation as defined in California Civil Code § 3426.1.

67.    The Locker Technology is a trade secret belonging to Beatport.

68.    On information and belief, and without the consent of Beatport, SoundCloud willfully and maliciously acquired the Locker Technology from Velilla, each of which knew, or has reason to know, that the Locker Technology was acquired by improper means. On information and belief, and without the consent of Beatport, Velilla willfully and maliciously disclosed the Locker

Technology to SoundCloud when Velilla knew, or had reason to know, that his knowledge of the Locker Technology was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

69.   By reason of Defendants' acts of trade secret misappropriation, Beatport has suffered and will continue to suffer irreparable injury unless and until this Court enters an order enjoining Defendants, and each of them, from any further acts of trade secret misappropriation.

70.   Defendants' continuing acts of trade secret misappropriation, unless enjoined, will cause irreparable damage to Beatport in that it will have no adequate remedy at law to compel Defendants to cease such acts. Beatport will be compelled to prosecute a multiplicity of actions, one action each time Defendants commit such acts, and in each such action it will be extremely difficult to ascertain the amount of compensation which will afford Beatport adequate relief.

71.   In addition, it is important for Beatport to be first to market with its version of the Pulselocker Platform, which is based on the assets that it properly acquired from Pulselocker. This will help Beatport improve its market position and maintain the momentum achieved from its acquisition of the Pulselocker Platform. Defendants' acts of trade secret misappropriation seek to prevent Beatport from being the first to market, causing irreparable damage to Beatport. It would be extremely difficult to ascertain the amount of compensation that would afford Beatport adequate relief for not being first to market with its version of the Pulselocker Platform.

72.   Beatport is therefore entitled to a preliminary injunction and a permanent injunction against further improper conduct by Defendants, those in concert with Defendants, and those directing the improper conduct.

73.   Defendants are also liable for Beatport's actual loss caused by the misappropriation and monetary damages caused by Defendants' misappropriation of Beatport's trade secret plus the unjust enrichment caused by the misappropriation

COMPLAINT

that is not taken into account in computing damages for actual loss. Alternatively, Defendants are also liable to Beatport for a reasonable royalty.

74.    The Defendants' misappropriation, being willful and malicious, also entitles Beatport to an award of exemplary damages up to twice the monetary damages and to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Beatport demands judgment against Defendants, as follows:

A.    A finding that each Defendant has misappropriated trade secrets owned by Beatport;

B.    For an order preliminarily and permanently enjoining each Defendant, and their officers, directors, agents, servants, attorneys, affiliates, and employees and all other persons acting in concert with them from committing any further acts of trade secret misappropriation with respect to the Locker Technology;

C.    For an order directing Defendants to file with this Court and to serve on Beatport within thirty (30) days after service on Defendants of the injunction granted herein, or another period as the Court may direct, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction and order of the Court;

D.    For a judgment to be entered for Beatport and against Defendants awarding damages adequate to compensate Beatport for the trade secret misappropriation;

E.    For a judgment awarding Beatport prejudgment and post-judgment interest until the award is fully paid by Defendants; and

F.    For a judgment that Defendants have willfully and maliciously misappropriated trade secrets owned by Beatport, entitling Beatport to be awarded exemplary damages;

G.    For an award to Beatport of costs, expenses, and attorneys' fees incurred in bringing this action; and

1         H.    For such other and further relief as this Court may deem just and

2    equitable under the circumstances.

3

4                                         Respectfully submitted,

5    Dated: February 4, 2019         MILLER NASH GRAHAM & DUNN LLP

6

7                                     By:  /s/ Sean D. O'Brien

8                                       Sean D. O'Brien

9                                       Phillip Allan Trajan Perez

10                                      Justin C. Sawyer

                                        Sanja Muranovic

11                                      Attorneys for Plaintiff, Beatport, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4842-6599-4630.2                17

COMPLAINT

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues raised by the complaint that are triable by jury.

Respectfully submitted,

Dated: February 4, 2019          MILLER NASH GRAHAM & DUNN LLP

By: /s/ Sean D. O'Brien
    Sean D. O'Brien
    Phillip Allan Trajan Perez
    Justin C. Sawyer
    Sanja Muranovic
    Attorneys for Plaintiff, Beatport, LLC

4842-6599-4630.2

COMPLAINT